# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTOPHER WILLIAM LAWLESS,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>BRIAN CATES,<br><br>　　　　Respondent. | Case No. 1:22-cv-00523-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Kristopher William Lawless is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On January 13, 2017, Petitioner was convicted by a jury in the Kern County Superior Court of, *inter alia*, child endangerment. On February 16, 2017, Petitioner was sentenced to twelve years for the child endangerment conviction plus a consecutive five-year term for a prior serious felony conviction enhancement, for a total imprisonment term of seventeen years. (LD[1] 1.) On February 13, 2019, the California Court of Appeal, Fifth Appellate District affirmed the conviction and remanded "for resentencing so the trial court may consider whether to exercise its

---
[1] "LD" refers to the documents lodged by Respondent. (ECF No. 15.)

newly created discretion to dismiss the enhancement." People v. Lawless, No. F075203, 2019 WL 581018, at *6 (Cal. Ct. App. Feb. 13, 2019). On April 24, 2019, the California Supreme Court denied the petition for review. (LD 4.)

On July 25, 2019, the trial court held a hearing, declined to strike the enhancement, and imposed the same sentence as before. People v. Lawless, No. F079747, 2021 WL 941403, at *1 (Cal. Ct. App. Mar. 12, 2021). On March 12, 2021, the California Court of Appeal, Fifth Appellate District affirmed the judgment. Id. at *2. On June 9, 2021, the California Supreme Court denied the petition for review. (LD 7.)

On May 2, 2022, Petitioner filed a federal petition for writ of habeas corpus, raising the following claims for relief: (1) the trial court's erroneous failure to dismiss the five-year sentencing enhancement for a prior serious felony conviction; and (2) ineffective assistance of counsel for failing to set forth post-conviction mitigating factors at the resentencing hearing that would support dismissing the enhancement. (ECF No. 1.) On June 21, 2022, Respondent filed a motion to dismiss, arguing that Petitioner's claim regarding the trial court's failure to dismiss the sentencing enhancement is unexhausted. (ECF No. 14 at 3.)[2] On February 23, 2023, the Court dismissed the first claim for relief and allowed Petitioner to proceed with his exhausted ineffective assistance of counsel claim. (ECF No. 28.) Respondent filed an answer, and Petitioner filed a traverse. (ECF Nos. 33–35.)

## II.

## STATEMENT OF FACTS[3]

> On October 30, 2015, defendant drove himself and Jane Doe, with whom he had previously been in a relationship, to his friend Steven's house. While there, defendant and Jane smoked methamphetamine, heroin, and ingested Xanax. Defendant began getting angry at Jane and blaming her for his problems.
>
> He and Jane eventually left to pick up Jane's one-year-old son Charlie from the babysitter and then returned to Steven's house with the child. Defendant got "angrier," "started getting a little crazy," and told Jane to go outside with him. Defendant forcefully told Jane to get in his truck. She complied, though she told defendant she did not want to leave Charlie with Steven. Defendant drove Jane

---

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.
[3] The Court relies on the California Court of Appeal's March 12, 2021 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

and himself to an empty parking lot where he parked and began hitting Jane. Using a zip tie, defendant bound Jane's wrists together and tied them to the glove compartment with an auxiliary cord. According to Jane, defendant first penetrated her vagina with a sex toy and then penetrated her anus with his penis. At some point later, she and defendant were outside of the truck. Defendant hit her in the face and she lost consciousness. When Jane regained consciousness, defendant told her to get back in the truck, and he drove them back to Steven's house.

Defendant went inside the house and brought Charlie out. He put Charlie's car seat in the passenger seat next to Jane, but Charlie was not properly buckled in and defendant did not secure the car seat in place with the seat belt. Defendant then drove them to a gas station where he got out to pay for gas. When he returned to the car, defendant hit Jane in the mouth because he suspected she had spoken to a man standing nearby. He hit Jane with enough force that "blood got everywhere," including on Charlie's face. He then "drove off crazy, stopped right before exiting the [gas station], and ripped his ankle monitor off, and threw it in the bushes." He told Jane he had to kill her because he did not want to go back to prison. Charlie would not stop crying, and Jane was concerned for her and Charlie's safety. Jane grabbed Charlie from his car seat and tried to comfort him, but when defendant started driving fast, she "hurriedly put [Charlie] back into the car seat and strapped his chest strap" but she was not able to fully buckle him in. Defendant was driving "recklessly," "very fast and crazy," weaving "in and out of cars." Jane held on to both sides of the car seat to keep it from tipping over. They passed a group of three or four police officers who tried to flag them down, but defendant raced past them. Defendant then drove the truck off the road into an orchard where it got stuck in a ditch. Defendant exited the truck to try to push it, then ran away. Jane got out of the truck, grabbed the car seat with Charlie in it, and went to a nearby fieldworker for help.

Jane called the police from the fieldworker's phone. The police arrived and told Jane they had caught someone. Jane identified defendant as the driver and the person who had caused injuries to her upper lip, right eye, and wrists. The People introduced photographs of Jane's injuries and an audio recording of Jane's 911 call.

Lawless, 2019 WL 581018, at *1–2.

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

3

1   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 576 U.S. 257, 268–69 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 576 U.S. at 269. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A

state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. Generally, federal courts "look through" unexplained decisions and review "the last related state-court decision that does provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court

independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## DISCUSSION

In his sole remaining claim for relief, Petitioner asserts ineffective assistance of counsel for failing to set forth post-conviction mitigating factors at the resentencing hearing that would support dismissing the enhancement. (ECF No. 1 at 8.) The Court construes Petitioner's argument to be that counsel was ineffective because he failed to proffer supporting documents that corroborated Petitioner's claimed efforts toward rehabilitation, as the claim was construed by the California Court of Appeal. Petitioner also appears to argue that counsel was ineffective for failing to call character witnesses. (Id. at 6.) Respondent argues that the state court reasonably rejected an ineffective assistance of counsel claim on direct appeal, and that to the extent Petitioner raises a new claim, it is unexhausted and plainly meritless. (ECF No. 33 at 5.)

To the extent Petitioner asserts an ineffective assistance of counsel claim based on counsel's failure to call character witnesses, Petitioner has not raised this claim to the state courts, which raises a potential exhaustion bar.[4] However, pursuant to 28 U.S.C. § 2254(b)(2),

---

[4] A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971). To provide the highest state court the necessary opportunity, the petitioner must "fairly present" the claim with "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Duncan, 513 U.S. at 365; Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "Fair presentation requires that the petitioner 'describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.'" Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008) (citation omitted).

the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (adopting the standard set forth in Granberry v. Greer, 481 U.S. 129, 135 (1987)).

An ineffective assistance of counsel claim was raised in the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The California Supreme Court summarily denied the petition for review. As federal courts "look through" summary denials and review "the last related state-court decision that does provide a relevant rationale," Wilson, 138 S. Ct. at 1192, this Court will examine the decision of the California Court of Appeal.

In denying Petitioner's ineffective assistance of counsel claim, the California Court of Appeal stated:

> In F075203, it was determined that Senate Bill No. 1393 (2017–2018 Reg. Sess.) applied retroactively to defendant's case. The legislation gave trial courts discretion to strike the five-year enhancement prescribed by section 667, subdivision (a). Imposition of the enhancement had previously been mandatory. Therefore, the matter was remanded to give the trial court an opportunity to exercise its discretion under the new law.
>
> On July 25, 2019, the trial court held a "resentencing" hearing. Both sides presented argument, and defendant read a prepared statement. Defendant claimed to have devoted himself to rehabilitation in the years since the original pronouncement of judgment. Those efforts included mental health counseling, voluntary participation in "Alcoholics Anonymous, Narcotics Anonymous, and criminal thinking recovery groups," and enrollment in a community college (presumably as a distance learner). Defendant also apologized and expressed remorse for having committed the underlying offenses.
>
> The trial court declined to strike the enhancement and imposed the same sentence as before. The trial court noted that it had not followed the probation department's recommendation of a lengthier aggregate prison term of 21 years 8 months. Defendant filed a timely notice of appeal and requested the appointment of counsel, which was granted.
>
> In March 2020, appointed counsel filed an opening brief pursuant to *Wende, supra*, 25 Cal.3d 436, requesting independent review of the record for arguable issues. Counsel gave the required notice to defendant, provided a copy of the *Wende* brief, and informed defendant he had 30 days to submit his own supplemental brief. (See *People v. Kelly* (2006) 40 Cal.4th 106, 124.) On March 26, 2020, this court provided separate notice to defendant of his right to file a supplemental brief. We later granted a continuance, but no further briefing was filed by the extended deadline of September 18, 2020.
>
> Defendant has advised us of his desire/intention to file a petition for writ of habeas corpus based on alleged ineffective assistance of counsel by the attorney

who represented him on remand. In a letter filed January 22, 2021, defendant seemed to indicate that he had wanted his appellate attorney to argue ineffective assistance of counsel in this appeal. To the best of our understanding, defendant believes he received inadequate representation on remand because the lawyer did not proffer supporting documents to corroborate defendant's claimed efforts toward rehabilitation.

To prevail on an ineffective assistance claim, a defendant must establish (1) the attorney's performance fell below an objective standard of reasonableness, and (2) prejudice occurred as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Anderson* (2001) 25 Cal.4th 543, 569.) "On direct appeal, a [judgment] will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Even if defendant could establish deficient performance, he would need to show the trial court might have otherwise decided to strike the five-year enhancement. (See *People v. Anderson, supra*, 25 Cal.4th at p. 569 [prejudice means " ' " 'but for counsel's unprofessional errors, the result of the proceeding would have been different' " ' "].) There is no indication the trial court disbelieved defendant's statements about his rehabilitative efforts. The judge expressly considered "all the circumstances before the Court, including the testimony [defendant] gave today." The judge also told defendant, "I am encouraged to hear that you feel you are making progress. You are changing your goals. You understand some of the issues you have to work on."

There is no basis upon which to conclude further evidence of defendant's rehabilitative programming would have changed the outcome of the sentencing hearing. In other words, the record does not support a claim of ineffective assistance of counsel.

We have independently reviewed the entire record and are satisfied no arguable issues exist and defendant's appointed appellate counsel has fully satisfied his responsibilities under *Wende*.

Lawless, 2021 WL 941403, at *1–2.

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within

the "wide range" of reasonable professional assistance. Strickland, 466 U.S. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697. "In assessing prejudice, we consider the mitigating effect of [the unpresented supporting documents that corroborated Petitioner's claimed efforts toward rehabilitation] and how it would have altered the balancing of aggravating and mitigating factors discussed at sentencing." Miles v. Ryan, 713 F.3d 477, 488–89 (9th Cir. 2013) (citing Porter v. McCollum, 558 U.S. 30, 130 S. Ct. 447, 453–54 (2009)).

At the resentencing hearing, the trial court stated that "in performing the resentencing of the defendant I am going to consider all the circumstances before the Court, including the testimony Mr. Lawless gave today."[5] (ECF No. 38-1 at 16.) Although the trial court was "encouraged to hear Mr. Lawless taking positive steps toward understanding what led to these convictions," the court did not strike the enhancement "in light of his . . . current crimes, plural, his criminal history, his background, his character, and prospects[.]" (Id. at 17–18.) In addressing Petitioner directly, the trial court stated:

> I am encouraged to hear that you feel you are making progress.
> You are changing your goals. You understand some of the issues
> you have to work on. And, again, you are a young man. You have

---

[5] In relevant part, Petitioner testified, "I have focused on changing my life, I have been engaging in activities producing positive actions. . . . Since incarceration, I have managed to seek professional help through psychiatry and mental health staff with dealing with my anger. . . . I decided to maintain recovery since recognizing why I am so broken by voluntarily attending Alcoholics Anonymous, Narcotics Anonymous, and criminal thinking recovery groups. . . . I have managed to enroll in Coastline Community College." (ECF No. 38-1 at 8.)

>       a long life ahead of you. And there is no reason why you can't
>       serve out this sentence, learn as much as you can, get an education,
>       and go out and become a productive member of our community
>       again.

(ECF No. 38-1 at 21–22.)

As noted by the appellate court, "[t]here is no indication the trial court disbelieved defendant's statements about his rehabilitative efforts," and "[t]he judge expressly considered 'all the circumstances before the Court, including the testimony [defendant] gave today.'" Lawless, 2021 WL 941403, at *2 (last alteration in original). Thus, it was not objectively unreasonable for the state court to find that Petitioner had not demonstrated there was a reasonable probability that the result of the proceeding would have been different if counsel had proffered supporting documents that corroborated Petitioner's claimed efforts toward rehabilitation. See Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (noting that under § 2254(d) "[a]ll that mattered was whether the *[state] court*, notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree" (last alteration in original) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009))).

Based on the foregoing, the state court's denial was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner's ineffective assistance of counsel claim based on counsel's failure to proffer supporting documents that corroborated Petitioner's claimed efforts toward rehabilitation should be denied.

With respect to ineffective assistance of counsel based on counsel's failure to call character witnesses, Petitioner alleges that his father, mother, and grandmother called counsel numerous times to be called as character witnesses. (ECF No. 35 at 1.) Petitioner does not provide any information as to the nature of the testimony his father, mother, and grandmother would have provided, much less declarations from these witnesses. See United States v. Berry,

814 F.2d 1406, 1409 (9th Cir. 1987) (holding ineffective assistance of counsel claim for not allowing defendant to call witnesses "meritless" because defendant "offers no indication of what these witnesses would have testified to, or how their testimony might have changed the outcome of the hearing" and thus "has not demonstrated that he was prejudiced by counsel's actions"); Wheaton v. Kernan, 288 F. App'x 316, 317 (9th Cir. 2008) ("To establish prejudice for failure to call . . . witnesses, the petitioner must present evidence 'sufficient to establish what [the witnesses'] testimony would have been.'" (quoting Alcala v. Woodford, 334 F.3d 862, 872 (9th Cir. 2003))). Accordingly, the Court finds that it is "perfectly clear" that Petitioner does not raise a colorable ineffective assistance of counsel claim based on the failure to call character witnesses. Accordingly, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

## V.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v.

///

///

///

Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 2, 2023**           /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE